IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| DEBRA J. MORSE, | ) CIVIL ACTION NO.9:16-3683-JMC-BM |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **REPORT AND RECOMMENDATION** |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein she was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a)(D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI)[1] on September 30, 2013, alleging disability beginning in January 2010 due to a Chiari I malformation.[2] (R.pp. 24, 239, 248, 294). Plaintiff later amended her alleged onset date to February

---

[1]Although the definition of disability is the same under both DIB and SSI; Emberlin v. Astrue, No. 06-4136, 2008 WL 565185, at *1 n. 3 (D.S.D. Feb. 29, 2008); "[a]n applicant who cannot establish that [he] was disabled during the insured period for DIB may still receive SSI benefits if [he] can establish that [he] is disabled and has limited means." Sienkiewicz v. Barnhart, No. 04-1542, 2005 WL 83841, at ** 3 (7th Cir. Jan. 6, 2005). See also Splude v. Apfel, 165 F.3d 85, 87 (1st Cir. 1999)[Discussing the difference between DIB and SSI benefits].

[2]"[A] congenital anomaly in which the cerebellum and medulla oblongata, which is elongated and flattened, protrude into the spinal canal through the foramen magnum. It is classified into three types according to severity: *type I* involves prolapse of the cerebellar tonsils into the spinal canal
(continued...)



24, 2014. (R.pp. 24, 396). Plaintiff's claims were denied both initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on August 4, 2015. (R.pp. 42-76). The ALJ thereafter denied Plaintiff's claims in a decision issued October 6, 2015. (R.pp. 24-35). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 1-4).

Plaintiff then filed this action in United States District Court. Plaintiff asserts that the ALJ's decision is not supported by substantial evidence, and that this case should be reversed and remanded to the Commissioner for further proceedings. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

## Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

---

²(...continued)
without elongation of the brainstem[.]". Dorland's Illustrated Medical Dictionary, 1098 (32nd ed. 2012).



evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)); see also Hepp v. Astrue, 511 F.3d 798, 806 (8th Cir. 2008)[Noting that the substantial evidence standard is even "less demanding than the preponderance of the evidence standard"].

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'" Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## Medical Records

Plaintiff's medical records confirm that a February 2012 cervical spine MRI revealed evidence of a mild Chiari I malformation and a syrinx[3] formation within Plaintiff's cervical and thoracic spinal cords. However, there were no definite interval changes from her 2009 MRI, and

---

[3]A syrinx is "an abnormal cavity in the spinal cord in syringomyelia." Dorland's Illustrated Medical Dictionary at 1858. Syringomyelia is defined as:
>a slowly progressive syndrome of cavitation in the central segments of the spinal cord, generally in the cervical region, but sometimes extended up into the medulla oblongata (syringobulbia) or down into the thoracic region; it may be of developmental origin....It results in neurologic deficits, usually segmental muscular weakness and atrophy with a dissociated sensory loss (loss of pain and temperature sensation, with preservation of the sense of touch), and thoracic scoliosis is often present.

Id. at 1858.



there was no obvious cord expansion at the imaged levels. Therefore, Plaintiff's Chiari I malformation and syrinx formation were deemed to be stable. (R.pp. 429-431).

On May 24, 2013, Plaintiff complained to Dr. Byron N. Bailey of Charleston Neurological Associates[4] that she was having increasing issues with headaches, neck pain, low back pain, dizziness, and dysthesias in her hands and feet which had progressively worsened over the previous month. (R.p. 479). Dr. Bailey reviewed Plaintiff's new (June 2013) MRIs and discussed possible surgery (a suboccipital craniectomy with decompression of the Chiari malformation) with the Plaintiff on June 21, 2013. (R.p. 481). Plaintiff thereafter again complained to Dr. Bailey of daily headaches, bilateral hand and feet numbness, bilateral shoulder pain with burning sensation, and severe bilateral hip pain on November 15, 2013, and stated she was ready for surgery. (R.pp. 496-497). Dr. Bailey ordered updated diagnostic imaging of her cervical, thoracic, and lumbar regions based on her complaints of back and hip pain, and MRIs taken in December 2013 showed that Plaintiff had a stable Chiari I malformation with no change in the somewhat discontinuous cervicothoracic cord syrinx, and that there was no cord expansion. There was also no disc herniation or significant canal or foraminal stenosis in her cervical, thoracic, or lumbar spines. (R.pp. 502-504).

On December 17, 2013, state agency physician Dr. Katrina B. Doig reviewed Plaintiff's medical records and opined that Plaintiff could perform light work;[5] was unlimited as to pushing and pulling other than the lift and/or carry limitations (twenty pounds occasionally and ten

---

[4]Plaintiff began treatment with Dr. Bailey in March 2009. (R.pp. 426-427, 430-431, 474-478).

[5]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

4



pounds frequently); that she could frequently climb ramps and stairs, balance, and kneel; could occasionally stoop, crouch, and crawl; could never climb ladders, ropes, or scaffolds; should avoid even moderate exposure to hazards; and should avoid concentrated exposure to extreme cold, extreme heat, noise, vibration, fumes, odors, dusts, gases, and poor ventilation. (R.pp. 109-111, 120-122). Also on December 17, 2013, state agency psychologist Dr. Olin Hamrick opined that Plaintiff's mental disorders (affective and anxiety disorders as well as non-severe organic brain syndrome) resulted in no limitations. (R.pp. 107-108, 118-119).

On January 24, 2014, Plaintiff complained to Dr. Bailey of progressive suboccipital neck pain with some radiation to her paraspinous muscles bilaterally. He noted that a cervical MRI showed Chiari malformation with syrinx that traveled to the mid-thoracic spine and was of small caliber, and that there were only minimal degenerative changes in Plaintiff's thoracic and lumbar spine. Plaintiff was assessed with Chiari malformation, syrinx, and back pain. (R.p. 519). Treatment notes from February 2014 from Carolina Family Medicine indicate that Plaintiff complained of worsening symptoms. (R.pp. 511-513). On February 24, 2014 (Plaintiff's amended alleged onset date of disability), Dr. Bailey performed surgery, a Chiari decompression with C1 laminectomy and duraplasty. (R.pp. 526-530). On March 11, 2014, he noted that Plaintiff was "recovering well postoperatively". (R.p. 565).

On March 20, 2014, state agency psychologist Dr. Lisa Clausen opined that Plaintiff's mental disorders resulted in no limitations. (R.pp. 132-133, 144-145). On March 21, 2014, state agency physician Dr. Angela Saito opined that Plaintiff could perform light work limited to frequent climbing of ramps and stairs, balancing, and kneeling; never climbing ladders, ropes, or scaffolds; occasionally stooping, crouching, and crawling; avoiding concentrated exposure to extreme heat and



5

cold, noise, vibration, fumes, odors, dusts, gases, and poor ventilation; and avoiding even moderate exposure to hazards. (R.pp. 134-136, 146-148). Dr. Saito further thought that Plaintiff's subjective statements as to the extent of her limitations were only partially credible, specifically finding that her allegations of numbness in her hands and feet at times as well as her headaches were credible, but that her allegation of only being able to lift fifteen to twenty pounds was not credible and not supported by objective findings. Dr. Saito noted that Plaintiff reported living alone and being independent with activities of daily living, was able to handle chores (including cooking, cleaning, doing laundry, and driving), and concluded that she should be able to sustain the RFC (Residual Functional Capacity) outlined. (R.pp. 134, 136, 146, 148).

On April 22, 2014, Plaintiff reported to Dr. Bailey that she had been in an automobile accident that had resulted in increased neck pain and suboccipital headaches. Plaintiff's range of motion was impaired due to pain and she was referred to physical therapy. Flexeril and Percocet were prescribed. (R.p. 563). Plaintiff thereafter underwent six physical therapy sessions at Progressive Physical Therapy from June 25 to July 24, 2014. (R.pp. 531-532). A spinal progress summary indicated that goals of increased range of motion, increased strength, increased joint mobility, and improved quality of movement were partially met while the goals of decreased symptoms and increased functional capacity were not met. (R.p. 531).

Plaintiff returned to Dr. Bailey on April 29, 2015, at which time she complained of continued low back pain and persistent neck pain with bilateral hand tingling dysesthesias. However, her dizziness and paresthesias in her lower extremities had improved. Dr. Bailey noted that an MRI showed minimal degenerative changes, with no significant canal or nerve root compromise. (R.p. 550).



6

On June 15, 2015, upon referral from Dr. Bailey, Plaintiff began treatment with Dr. Stephanie Vanterpool at Pain Management Associates. (R.pp. 570-576). Dr. Vanterpool wrote:

> New patient is here today for pain in her right shoulder blade. Patient is having pain in her skull that radiates down her neck into both shoulders. Currently Patient is concerned with pain in the right shoulder blade. This pain is described as "someone taking muscle and twisting it." Patient also has lower back pain that just sits at her waist line. Patient also has pain in her right buttocks that radiates down into the back of right leg into the knee. Patient states this pain is tight and achy. Patient has been told she has DDD from Dr. Bailey her surgeon. Patient is currently out of all pain medications. Patient[']s current pain scale is 9/10.

(R.p. 572). Plaintiff reported that her pain was worse with any type of lifting or repetitive motion, that she had a constant aching sensation, and had occasional radiation to the upper arms. Plaintiff complained of low back pain that started above her belt line with radiation down her legs to above her knees which was worse with bending, twisting or lifting, and that she had to change positions frequently from sitting to standing to obtain relief. Plaintiff also reported that she had been prescribed Baclofen with minimal effect and had tried a TENS unit for her thoracic pain, and quickly developed a tolerance to the TENS unit therapy. Although she had taken both Norco and Tramadol in the past, she reported that she did not find them very effective, but was currently taking Flexeril which provided some relief.

On examination Plaintiff's active range of motion in her lumbar spine was 80 degrees of flexion and 10 degrees extension. She had soft tissue tenderness of the trapezius bilaterally, and her cervical spine active range of motion was 60 degrees to the left and 45 degrees to the right with flexion severely limited and extension moderately limited. Dr. Vanterpool assessed:

> [U]pper trapezius to mid trapezius back pain consistent with triggerpoints. May benefit from bilateral trapezius trigger point injections. Low back pain does have a large spasm component. May benefit from physical therapy targeting both the low back and the upper back. If the above treatments do not adequately alleviate the

7



patient's pain, may consider prescribing a topical patch such as Flector patch. Will give patient samples of the Flector patch today given she appears to be exceedingly uncomfortable in the shoulder blade region.

(R.pp. 570-575).

On referral from Dr. Vanterpool, Plaintiff began treatment at Grace Physical Therapy on June 23, 2015, at which time Plaintiff reported sharp and aching pain in her shoulder and back that was always present, and that she felt more pain when standing, getting up from a seated position, lifting, and reaching. The physical therapist assessed Plaintiff with limited lumbar range of motion, pain with motion and tightness in the musculature of her bilateral lower extremities, and concurrent weakness in her bilateral hips and legs. (R.pp. 586-590). Plaintiff reported a significant increase in neck and upper back pain on June 29, 2015. A moderate restriction in her cervical range of motion and pain with all active motion and major restriction in cervical retraction were noted. (R.pp. 583-584). Plaintiff reported feeling better at her June 30, 2015 appointment (R.p. 581), but stated on July 2, 2015 that she had a very bad day after the previous appointment and had to stay in bed for most of the day. (R.p. 578).

## **Discussion**

Plaintiff was forty-eight years old on her amended alleged onset date, and forty-nine years old at the time of the ALJ's decision. She has more than a high school education (she has an associate's degree), and past relevant work as a licensed practical nurse. (R.pp. 33, 45, 72, 241, 294, 295). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience, and functional capacity, and which has lasted or could reasonably be expected to last for



a continuous period of not less than twelve (12) months. After a review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairments[6] of Chiari malformation, anxiety, and depression (R.p. 26), she nevertheless retained the RFC to perform light work with the limitations that she can never climb ladders, ropes, or scaffolds; can frequently climb ramps or stairs, balance, and kneel; can only occasionally stoop, crouch, and crawl; must avoid concentrated exposure to extreme cold, extreme heat, excessive noise, excessive vibration, and irritants such as fumes, odors, dust, and gases; and is restricted to simple, routine, repetitive tasks with only occasional changes in the work setting (R.p. 29). At step four, the ALJ found that Plaintiff was unable to perform her past relevant work with these limitations. (R.p. 33). However, the ALJ obtained testimony from a vocational expert (VE) and found at step five that Plaintiff could perform other jobs existing in significant numbers in the national economy with her limitations, and was therefore not entitled to disability benefits during the time period at issue. (R.pp. 34-35).

Plaintiff asserts that in reaching this decision, the ALJ erred because he improperly evaluated her credibility, failed to find that her spinal syrinx was a severe impairment, failed to consider whether this impairment met or equaled Listing 1.04B (Disorders of the Spine - Spinal Arachnoiditis),[7] and failed to pose a complete hypothetical question to the VE such that the VE's

---

[6]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1520(c); Bowen v. Yuckert, 482 U.S. 137, 140–142 (1987).

[7]In the Listings of Impairments, "[e]ach impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). In order to meet a listing, a claimant's impairment must "meet *all* of the specified medical criteria." Id. (emphasis in original).



9

testimony failed to provide support for the ALJ's findings. Plaintiff further asserts that the Appeals Council committed reversible error because it failed to remand this matter to the ALJ for consideration of newly submitted evidence. After careful review and consideration of the arguments presented, and for the reasons set forth hereinbelow, the undersigned is constrained to agree with the Plaintiff that the Appeals Council committed reversible error in its evaluation of the evidence submitted by Plaintiff on appeal, thereby requiring a remand of this case for further consideration of Plaintiff's claim.

After the ALJ's decision Plaintiff submitted additional medical evidence to the Appeals Council, including an opinion from Dr. Bailey, and medical records from Dr. Bailey (Charleston Neurosurgical Associates), Grace Physical Therapy, Pain Management Associates, and Carolina Family Medicine. (R.pp. 591-670). These records show that on July 22, 2015, Plaintiff reported to Dr. Bailey that her neck and low back pain improved with injections and medication management with Dr. Vanterpool, she had slow improvement of the paresthesias in her hands and feet, and that she currently had midback pain for which trigger point injections had provided only minimal relief. Dr. Bailey planned to recheck Plaintiff's recent MRI, ordered x-rays to assess her scoliosis, and directed her to continue her pain management. (R.pp. 600-601). Plaintiff thereafter complained to Dr. Bailey of continued neck and right posterior leg pain on October 10, 2015, with her primary complaint being mid back pain at the level of her bra strap as well as intrascapular pain. Moreover, her recent thoracic MRI revealed a "syrinx extending from T3-4 down to T6-7 with no central canal stenosis." (R.pp. 597-598). On November 20, 2015, Dr. Bailey provided an opinion in which he stated that he had treated Plaintiff for Chiari malformation, syrinx of the spinal cord, and mid and low back pain, and that he had performed surgery on her for her condition on February 24,



10

2014. Dr. Bailey stated that with respect to Plaintiff's Chiari malformation, she recovered well postoperatively. As to her syrinx, Dr. Bailey opined that Plaintiff would need regular and continued MRIs to follow her syrinx and would need continued conservative treatment measures including medications, injections, therapy, and/or further surgical intervention. Dr. Bailey further opined that Plaintiff would likely continue to experience intermittent exacerbations of symptoms such as headache, neck pain, numbness/tingling as well as mid and low back pain, and that to his knowledge Plaintiff:

> has not been able to maintain the physical and/or mental demands of work at any level of physical exertion, including sedentary jobs, on a full time basis since the time of her surgery in February 2014.

Additionally, Dr. Bailey opined that he did not expect to see any improvement in her functional capacity due to her persistent intermittent symptoms. (R.pp. 592, 595-596).

In addition to this evidence from Plaintiff's treating neurosurgeon, the newly submitted records show that Plaintiff received injections from Dr. Vanterpool on July 13, August 11, August 26, September 10, October 8, and November 2, 2015. Additionally, Fentanyl patches were prescribed beginning in July 2015. (R.pp. 645-662). These records further show that Plaintiff continued physical therapy at Grace Physical Therapy from July until September 2015, where she reported feeling a bit better on July 21, 2015; felt very stiff and sore on July 31, 2015; reported feeling good on August 3, 2015; had a very bad headache on August 13, 2015; felt pretty sore on August 17, 2015 after falling in her yard; and that her neck was feeling "ok" despite not sleeping well the night before her August 20, 2015 visit. (R.pp. 610, 613, 616, 620-621, 623). On September 2, 2015, Plaintiff reported that she was really sore from her mid-back toward her right shoulder blade, but that her neck was good and she did not have any back pain anymore. She was concerned that she had lost



11

strength, and the physical therapist assessed that while Plaintiff had improvement in mobility, her pain levels remained fairly consistent without use of pain patch/medications. Plaintiff reported being unable to perform household duties, activities of daily living, or ambulating greater than ten minutes without aggravation of symptoms, and that she had frequent headaches that limited her ability to participate or progress treatment. It was noted that she had met 3/12 goals, partially met 5/12 goals, and did not meet 4/12 goals. (R.pp. 629-630). Plaintiff began another round of physical therapy on September 17, 2015. (R.pp. 636-639). On September 25, 2015, Plaintiff reported feeling pretty good and not having much pain. (R.pp. 642-643).

The proper manner and procedure for the handling of new evidence submitted to an Appeals Council was discussed extensively by the Fourth Circuit in Meyer v. Astrue, 662 F.3d 700 (4th Cir. 2011). When a claimant requests review of an ALJ decision, the Appeals Council may deny or dismiss the request for review, or it may grant the request and either issue a decision or remand the case to the ALJ. Where a claimant submits additional evidence that was not before the ALJ when requesting review by the Appeals Council, if the evidence is new and material the Appeals Council is to evaluate the entire record, including the new and material evidence to see if it warrants any change in the ALJ's decision. If, after this evaluation, the Appeals Council finds that the ALJ's action, findings, or conclusion is contrary to the weight of the evidence currently of record, it will grant the request for review and either issue its own decision on the merits or remand the case to the ALJ. Conversely, if upon consideration of the evidence, including any new and material evidence, the Appeals Council finds that the ALJ's action, findings or conclusions are not contrary to the weight of the evidence as a whole, the Appeals Council can simply deny the request for review. See generally, Meyer, 662 F.3d at 704-705.



Here, in denying review, the Appeals Council stated that it had considered the reasons Plaintiff disagreed with the ALJ's decision and the additional evidence and concluded that it "found that this information does not provide a basis for changing the [ALJ's] decision." (R.p. 2). As was noted in Meyer, courts should affirm an ALJ's denial of benefits after reviewing new evidence presented to the Appeals Council where, even with this new evidence, substantial evidence support the ALJ's findings. However, reversal is required if on consideration of the record as a whole, the court "simply cannot determine whether substantial evidence supports the ALJ's denial of benefits . . . ." Meyer, 662 F.3d at 707. In Meyer, such was found to be the case where the new evidence was evidence from a treating physician that the ALJ did not have in reaching his decision, which contradicted the ALJ's findings and decision and which corroborated other evidence that the ALJ had rejected.

In finding Plaintiff to be not disabled in this case, the ALJ gave significant weight to the opinions of the non-treating, non-examining state agency physicians, which pre-date the evidence provided to the Appeals Council. (R.p. 33). The ALJ also specifically noted that "[g]iven the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of permanent restrictions placed on the claimant by the treating doctor. A review of the evidence of record reveals no such restrictions recommended by any of the [Plaintiff's] treating or evaluating physicians". (R.pp. 32-33). However, the new evidence provided to the Appeals Council includes the opinion of treating neurosurgeon Dr. Bailey that as a result of her medical impairments Plaintiff has not been able to maintain the physical and/or mental demands of work at any level of physical exertion, including sedentary jobs, on a full time basis since the time of her surgery (performed by him) in February 2014 (the amended alleged onset date). See 20 C.F.R. §



13

404.1527(d)(5) (2001) [opinion of a specialist about medical issues related to his or her area of specialty are entitled to more weight than the opinion of a physician who is not a specialist]. This opinion directly addresses the lack of such evidence from a treating source noted by the ALJ in his decision. Cf. Wyns-Bills v. Colvin, No. 14-3353, 2015 WL 5117018 at * 6 (D.S.C. Aug. 31, 2015) [Remanding under Meyer analysis where pharmacy records submitted to Appeals Council filled an "evidentiary gap"]. Although it may be argued that such an opinion is one reserved to the Commissioner,[8] Dr. Bailey's November 2015 opinion also provides further information as to Plaintiff's syrinx impairment, which the ALJ did not find to be a severe impairment. In his November 2015 opinion, Dr. Bailey stated that Plaintiff's syrinx impairment would need continuing medications, injections, therapy, and/or further surgical intervention. He also noted that Plaintiff would likely continue to experience symptoms such as headaches, neck pain, numbness/tingling, and mid and low back pain. (R.p. 592).

Additionally, the new evidence also provides further information concerning Plaintiff's credibility. The ALJ discounted Plaintiff's credibility, finding that Plaintiff's reports to her treating and examining physicians as well as the findings upon examination were inconsistent with Plaintiff's testimony. In doing so, the ALJ stated that in July 2014 Plaintiff no longer needed Butrans patches, that in September 2014 she no longer needed Oxycontin, and that she was not prescribed any pain medication in February 2015.[9] (R.p. 31). However, the additional evidence

---

[8]See Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994) [physician opinion that a claimant is totally disabled "is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]"].

[9]Although the ALJ cites to Carolina Family Medicine records in stating that Plaintiff was not prescribed any pain medication in February 2015, the list of Plaintiff's current medications at her
(continued...)



14

submitted from Plaintiff's treating pain specialist Dr. Vanderpool indicates that Plaintiff continued to regularly receive injections for pain as well as prescriptions of pain medication. These additional records from Dr. Vanderpool also indicate that in July 2015 Plaintiff was prescribed Fentanyl patches for pain (Dr. Vanderpool noted that Plaintiff had a history of being on long-acting narcotics and that Butrans patch worked well, but caused a severe skin reaction) and that the dosage of the patches was increased in August 2015. (R.pp. 659, 662).

The ALJ also discounted Plaintiff's credibility in large part based on her activities of daily living, citing to a function report completed by Plaintiff in April 2012, two years *prior* to her amended alleged onset date of disability. (R.pp. 31-32, 303-311). However, the ALJ never discusses Plaintiff's March 2014 function report, covering Plaintiff's alleged period of disability, in which Plaintiff reported that she was limited in her ability to work because she was unable to turn her neck, had difficulty walking, had severe pain down her legs, was unable to sit and stand more than five minutes, was unable to reach, had chronic pain, was dizzy, had great difficulty concentrating and remembering things, had to have her children take care of her animals, and could not take care of household chores or cook. (R.pp. 364-365). Further, the evidence submitted to the Appeals Council, including reports by Plaintiff's physical therapist, provide further information concerning Plaintiff's condition after her amended alleged onset of disability date.[10] (R.p. 33).

---

[9](...continued)
February 9, 2015 visit included Norco, Ultram, and Flector patches. (R.p. 533).

[10]Plaintiff also argues that in his hypothetical to the VE, the ALJ failed to properly consider or account for how her impairments affected her ability to concentrate. (R.p. 34). The ALJ found that Plaintiff had moderate difficulties as to concentration, persistence, or pace. (R.p. 28). In determining Plaintiff's RFC, the ALJ then restricted Plaintiff to simple, routine, repetitive tasks in a low stress job with only occasional changes in the work setting based on Plaintiff's depression,
(continued...)



15

As was noted in Meyer, courts should affirm an ALJ's denial of benefits after reviewing new evidence presented to the Appeals Council where, even with this new evidence, substantial evidence support the ALJ's findings. However, reversal is required if, on consideration of the record as a whole, the court "simply cannot determine whether substantial evidence supports the ALJ's denial of benefits . . . ." Meyer, 662 F.3d at 707. Such is the case here. It is unclear whether the ALJ's decision would be the same, especially as to the weight given to opinion evidence, the consideration of Plaintiff's credibility, and the formulation of Plaintiff's RFC in light of the new evidence submitted to the Appeals Council. While it is certainly possible that the ALJ on remand might still reach the same conclusions as are set forth in the original decision, or perhaps determine that Plaintiff can perform other types of work, that is a finding that must be made by the ALJ, not by this Court in the first instance. See Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001)[Court cannot affirm a decision on a ground that the ALJ did not himself invoke in making the decision]; Bray v. Commissioner of Social Security Admin., 554 F.3d 1219, 1225 (9th Cir. 2009)["Long-standing principles of administrative law require us to review the ALJ's decision based on the

---

<sup>10</sup>(...continued)
anxiety, and medication side effects. (R.p. 33). However, in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), the Fourth Circuit held that "an ALJ does not account 'for a claimant's [moderate] limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" Mascio, 780 F.3d at 638, quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011). Hence, although the RFC restrictions (based on Plaintiff's depression, anxiety, and medication side effects) found by the ALJ may take Plaintiff's moderate difficulties in concentration, persistence, or pace into account, or the ALJ may be able to explain why this limitation did not translate into a limitation addressed in the RFC, he did not do so in the decision. See Mascio, 780 F.3d at 638 [noting that the ALJ may be able to explain why a concentration, persistence, or pace limitation did not translate into a limitation in the RFC ("[f]or example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the [VE]"), but finding that remand was appropriate because the ALJ gave no explanation].



16

reasoning and factual findings offered by the ALJ - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."]; Nester v. Astrue, No. 08-2045, 2009 WL 349701 at * 2 (E.D. Feb. 12, 2009)[Noting that the Court "may not consider *post hoc* rationalizations but must evaluate only the reasons and conclusions offered by the ALJ."]. Therefore, the decision should be reversed for a proper consideration of this new evidence.

With respect to the remainder of Plaintiff's claims of error, the ALJ will be able to reconsider and re-evaluate the evidence in toto as part of the reconsideration of this claim. Hancock v. Barnhart, 206 F.Supp.2d 757, 763-764 (W.D.Va. 2002)[On remand, the ALJ's prior decision has no preclusive effect, as it is vacated and the new hearing is conducted *de novo*].

### Conclusion

Based on the foregoing, and pursuant to the power of this Court to enter a judgment affirming, modifying or reversing the decision of the Commissioner with remand in Social Security actions under Sentence Four of 42 U.S.C. § 405(g), it is recommended that the decision of the Commissioner be **reversed**, and that this case be **remanded** to the Commissioner for reevaluation of the evidence as set forth hereinabove, and for such further administrative action as may be necessary. See Shalala v. Schaefer, 509 U.S. 292 (1993).

The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

December 5, 2017
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).